UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FENF, LLC,

    Plaintiff,

vs.

ZHANJIANG YONGXIAO
INFORMATION CONSULTING
STUDIO

    Defendant.
_____/

Case No. 25-cv-12093
Hon. F. Kay Behm

**ORDER GRANTING PLAINTIFF'S RENEWED
MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER**

This matter having come before the Court upon Plaintiff's, FenF LLC's ("FenF"), Renewed Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction and upon consideration of the record and otherwise fully being advised in the premises, and pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65 the Court enters the following Order.

I.    **Legal Standard**

Fed. R. Civ. P. 65(b) allows a court to issue a temporary restraining order (TRO) without notice to the adverse party, only if:

>    (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>    (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)–(B).

To prevail on its motion for *ex parte* temporary restraining order, FenF must show that (1) it has a reasonable likelihood of success on the merits; (2) it will likely suffer if preliminary relief is not granted; (3) the balance of the hardships tips in its favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005); and *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008).[1]  The Lanham Act authorizes this Court to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a).

---

[1] The standard for granting a TRO is the same as that for granting preliminary injunctive relief. *See Black v. Cincinnati Fin. Corp.*, No. 1:11-cv-210, 2011 WL 1640962, at *1 (S.D. Ohio May 2, 2011) (citing *Ohio Republican Party v. Brunner*, 543 F.3d 357, 362 (6th Cir. 2008)) ("[the] difference [between TROs and preliminary injunctions] is largely academic as the same factors apply to both.").

1

## II.     Findings of Fact and Conclusions of Law

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because this action arises under the trademark laws of the United States (15 U.S.C. §§ 1051 *et seq*).

2. This Court has personal jurisdiction over Defendant because Defendant directly targets business activities toward consumers in the United States, including Michigan through, at least, its ecommerce presence.  Defendant has committed acts of trademark infringement and dilution giving rise to the cause of action raised by this Complaint in Michigan and in this judicial district.

3. FenF is the owner of protectable trade dress for a foot-therapy product that includes gemstone handles and has obtained a Federal Trademark Registration, Registration No. 5,098,981, for the gemstone handle design ("the '981 Registration").  The '981 Registration has become incontestable.

4. As set forth in the '981 Registration, FenF's trade dress "consists of a three-dimensional gem-like configuration of a toe stretcher. The four gems at the top of the toe stretcher constitute the mark and are claimed as part of the mark" as shown:



5. FenF is the owner of protectable trade dress for the color sapphire blue in connection with toe stretchers and has obtained a Federal Trademark Registration, Registration No. 5,099,070, for the color sapphire blue in connection with toe stretchers ("the '070 Registration").  The '070 Registration has become incontestable.

6. As set forth in the '070 Registration, FenF's trade dress "consists of a particular blue color which makes up the body and/or surface of a toe stretcher. The matter shown in dotted lines is not a part of the mark and serves only to show the position or placement of the mark" as shown:



7. Defendant advertises, offers for sale, and sells a toe stretcher under the designation "Gel Toe Stretcher & Separator" ("Defendant's toe stretcher"). Defendant's toe stretcher features upstanding posts made of an elastic material where each of the upstanding posts has a faceted gemstone handle at a free end thereof.  Defendant's toe stretcher features a blue sapphire color.  *See* https://www.amazon.com/Stretcher-Separator-%EF%BC%8CHammer-Small-Sizes/dp/B0F6XM8Z8W/ref=sr_1_1?dib=eyJ2IjoiMSJ9.jFzpwBciyyEf0JnSvFcys gpMbTpe5FZoPiGmgPyQnQc.NhRA6A7_UhWTsyquA3zA9p7GPdmgrXUEoHF

3

[F-b9UleU&dib_tag=se&m=AVG3OA9O35ST6&marketplaceID=ATVPDKIKX0DER&qid=1752020047&s=merchant-items&sr=1-1](#); and shown here:



8. FenF has neither consented to nor authorized Defendant to advertise, offer to sell, or sell Defendant's toe stretcher nor any product covered by the '981 Registration or the '070 Registration.

9. FenF asserts that Defendant's toe stretcher infringes FenF's '981 Registration and FenF's '070 Registration in violation Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a).

10. Section 32 of the Lanham Act provides a federal cause of action for infringement of a registered trademark. "To establish a claim for trademark infringement for a registered trademark, a plaintiff must show that: (1) it owns the registered trademark, (2) the defendant used the trademark in commerce, and (3) the

use was likely to cause confusion." *Bliss Collection, LLC v. Latham Cos., LLC*, 82 F.4th 499, 506 (6th Cir. 2023).

11. FenF is the owner of the '981 Registration for its gemstone handle design. The gemstone handle mark of the '981 Registration is incontestable. The incontestable status of the mark of the '981 Registration is conclusive evidence of the validity of the mark, that FenF owns the mark, and that FenF has exclusive rights to use of the mark in commerce. 15 U.S.C. § 1115(b).

12. FenF is the owner of the '070 Registration for its sapphire blue color. The sapphire blue color mark of the '070 Registration is incontestable. The incontestable status of the mark of the '070 Registration is conclusive evidence of the validity of the mark, that FenF owns the mark, and that FenF has exclusive rights to use of the mark in commerce. 15 U.S.C. § 1115(b).

13. To obtain an effective early order, FenF must seek an *ex parte* TRO, rather than a preliminary injunction, in this instance because notice to the Defendant would "render fruitless further prosecution of the action." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). As this Court, and other courts, have recognized, "proceedings against those who deliberately traffic in counterfeit merchandise are often ineffective if notice is given to the adverse party prior to service." *See N. Atl. Operating Co., Inc. v. Babenko*, No. 15-14013, 2015 WL 13542566, at * 1 (E.D. Mich. Nov. 19, 2015) (finding that without an *ex parte* order,

5

Defendants were likely to change, destroy, or delete evidence, and transfer or hide assets from financial accounts; *ex parte* order preserves records and assets and prevents Defendants from changing or deleting online identities); *Lorillard Tobacco Co. v. Applewood Party Store, Inc.*, No. 05cv70913 (E.D. Mich. Mar. 11, 2005) (granting an *ex parte* TRO because, *inter alia*, adverse party was likely to destroy, move, or hide evidence); *and Yupoong Inc. v. 723 Individuals, Corps., LLCs, P'ships, and Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 1:19-cv-06675, 2019 WL 13538116 (N.D. Ill. Oct. 30, 2019) (in absence of an *ex parte* order, Defendants were likely to modify registration data, change hosts, redirect traffic, and move assets).

14. FenF has shown that if Defendant is notified of this Motion, it will likely cancel its online accounts, dispose of, or hide its business records, transfer or otherwise dispose of assets obtained from its infringement, or move the locations of its infringement operations. Defendant will likely disappear only to reappear in a new form.

15. FenF has previously enforced its trademark rights and obtained a Permanent Injunction Order against Chinese Defendants in two previous cases. *See FenF, LLC v. Schenzhen Fromufoot Co., Ltd. et.al.*, 2:16-cv-12616-AJT-MKM (E.D. MI July 12, 2018) DKT 21, and (Aug. 8, 2018) DKT 23, and *FenF, LLC v. Welnove Inc.*, 2:23-cv-13181-MAG-KGA (E.D. Mich. June 3, 2024) DKT 18. In both cases,

despite the Court entering a Default Judgment in favor of FenF, the amounts awarded FenF were not recovered due to the transfer of assets by each of the respective Defendants out of the country, prior to the entry of the Orders. Similarly, if notified of this Motion, Defendant would likely transfer its assets obtained via its infringing activities such that they cannot be collected. Even worse, the Defendant will likely reappear under a different store name and continue to damage FenF's goodwill. The transfer of assets in addition the loss of goodwill while Defendant is allowed to infringe, would "render fruitless further prosecution of the action" as FenF would not be able to collect its damages from the infringing activities, and the risk is run that Defendant will irreversibly harm the goodwill in FenF's GEM® product.

16. FenF will only be able to prevent the destruction, by removal from the country, of crucial evidence to hold the Defendant accountable by proceeding *ex parte*. Evidence of infringing sales resides in Defendant's possession, custody, and control. If given prior notice, Defendant would have every incentive to destroy, move, or conceal relevant electronic and physical documents, as well as other evidence and assets. *See Lorillard*, No. 05CV70913 (granting an *ex parte* TRO because adverse party was likely to destroy, move, or hide evidence).

17. The standard for issuance of a TRO, and further preliminary injunction is that FenF must demonstrate (1) its reasonable likelihood of success on the merits, (2) the irreparable harm that it will suffer if preliminary relief is not granted, (3) the balance

7

of the hardships tipping in its favor, and (4) the adverse impact on public interest. *See Winter*, 555 U.S. 7 at 20; *Tumblebus,* 399 F.3d at 760; and *Procter & Gamble*, 549 F.3d at 847. The Lanham Act authorizes this Court to issue injunctive relief "according to principals of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a).

18. "To establish a claim for trademark infringement for a registered trademark, a plaintiff must show that: (1) it owns the registered trademark, (2) the defendant used the trademark in commerce, and (3) the use was likely to cause confusion." *Bliss Collection*, 82 F.4th at 506.

19. Defendant has used and is using a reproduction, counterfeit, copy, or colorable imitation of FenF's registered gemstone handle mark and FenF's registered sapphire blue mark in commerce through its advertising, promotion, distribution, and offering for sale of its toe stretcher, which includes upstanding posts having gemstone handles as set forth above.

20. The Sixth Circuit has observed that "[t]he touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997); *see also*, *Ford Motor Co. v. Lloyd Design Corp.*, 184 F. Supp. 2d 665,

8

669 (E.D. Mich. 2002) (quoting *Daddy's Junky Music Stores*, 109 F.3d at 280). In the Sixth Circuit, the likelihood of confusion analysis entails an examination of

      1. strength of the plaintiff's mark;

      2. relatedness of the goods;

      3. similarity of the marks;

      4. evidence of actual confusion;

      5. marketing channels used;

      6. likely degree of purchaser care;

      7. defendant's intent in selecting the mark; and

      8. likelihood of expansion of the product lines.

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), *cert. denied*, 459 U.S. 916 (1982).

    21. FenF has spent millions of dollars promoting it gemstone product, which has been featured on major media outlets. *See e.g.*, *Daddy's Junky Music Stores*, 109 F.3d at 280 (citation omitted) ("A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source;' such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both."). In addition, the gemstone trade dress and the sapphire blue color have achieved incontestable status which also makes the marks strong. *Id*. at 282 (citation omitted)

9

("[a]n incontestable mark 'is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark.'"). FenF's mark is strong.

22. FenF's toe stretchers and Defendant's toe stretchers are for the same purpose and sold to the same customers. FenF's and Defendant's goods are in direct competition. When the goods bearing the marks are in direct competition, "confusion is likely if the marks are sufficiently similar." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1108 (6th Cir. 1991).

23. FenF's registered trademarks consist of a gemstone handle on the free ends or tops of upstanding posts of a toe stretcher and a toe stretcher that is sapphire blue in color. Defendant's product consists of a gemstone handle on the free ends or tops of upstanding posts of a toe stretcher that is sapphire blue in color. There is little difference between the gemstone design of Plaintiff's '981 Registration and defendant's infringing gemstone design.

24. FenF's gemstone design and Defendant's gemstone design, when considered in their entireties, create the identical commercial impression, namely a gemstone design on the ends or tops of freestanding posts of a toe stretcher. *See id*. at 1109 ("It is the overall impression of the mark, not an individual feature, that counts.").

25. FenF's design color and Defendant's design color, when considered in their entireties, create the identical commercial impression, namely a toe stretcher that is

10

sapphire blue in color. *See id*. at 1109 ("It is the overall impression of the mark, not an individual feature, that counts.").

26. Each of FenF's and Defendant's toe stretchers are sold through the same marketing channels including ecommerce platforms such as Amazon. Defendant targets the identical customers as FenF and sells the infringing toe stretcher through the same marketing channels.

27. Defendant selected its gemstone design and color to mimic Plaintiff's registered gemstone design and color. With the longstanding, widespread success and exposure of FenF's registered gemstone mark, and its notoriety, including having been on the top spots on Amazon's seller list for this category of product for multiple years, it is reasonable to infer that Defendant intended to trade on Plaintiff's registered design. Intent can be inferred from the facts here. *Kibler v. Hall*, 843 F.3d 1068, 1081 (6th Cir. 2016). "Circumstantial evidence of intent is sufficient when direct evidence is unavailable (as it often is)." *Id*. Evidence of this intent is demonstrated in the way that Defendant chose to mimic not only FenF's gemstone design, but the way that Defendant's Amazon listing, and particularly the photographs and text contained on them, copies FenF's listing and photographs. FenF has provided sufficient circumstantial evidence that Defendant specifically intended to copy FenF's registered trade dress. Further, "[i]f a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an

11

inference of confusing similarity." *Homeowners Grp.*, 931 F.2d at 1111 (citation omitted).

28. This Court concludes that six of the eight likelihood of confusion factors support a finding of likelihood of confusion, with the other two factors being not applicable or neutral to this analysis, and therefore finds that Defendant's product is likely to cause confusion with FenF's marks of the '981 Registration and the '070 Registration.

29. The Court finds that FenF is likely to succeed on the merits of showing a violation of 15 U.S.C. § 1114.

30. The finding that a likelihood of confusion exists because of Defendant's acts of trademark infringement is sufficient to establish that FenF has suffered an irreparable injury. And, so long as Defendant's actions may be allowed to continue, there is potential for future harm to FenF with no adequate remedy at law. *Audi AG v. D'Amato*, 469 F.3d, 534, 550 (6th Cir. 2006).

31. FenF is further irreparably harmed in that every sale by Defendant of its infringing product decreases FenF's market share. Further, Defendant's advertising and sale of its infringing product erodes the goodwill associated with FenF's registered design.

32. Defendant, on the other hand, will not suffer any hardship. There is no doubt that Defendant would be unable to sell the infringing product but that is not a

hardship. If an injunction is granted, Defendant would not face any hardship in being restrained from violating FenF's trademark rights, while FenF would face the possibility of further loss of good will and risk to its reputation. *Am. Auto Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 758 (E.D. Mich. 2014) (quoting *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999)) ("The Sixth Circuit explained that irreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition.").

33. The relative hardships further lead to the grant of a TRO. Defendant cannot establish hardship based on the sale of an infringing product. *See e.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("A party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one.").

34. The public has a general interest in preventing consumer confusion. *Audi AG*, 469 F.3d at 550. FenF seeks a narrowly tailored TRO that prevents the future sale of Defendant's infringing product and products not colorably different therefrom.

35. The narrowly tailored TRO will eliminate the likelihood of confusion, benefiting the public.

36. Defendant is an entity in China who can readily transfer its assets out of the reach of the U.S. Courts. District courts have inherent power to freeze defendants'

13

assets for this purpose. *Reebok Int'l Ltd. v. Marnatech Enter.*, 970 F.2d 552, 559 (9th Cir. 1992). Requests for the temporary restraint of assets are appropriate in order to ensure that final equitable relief is collectible. *See, e.g.*, *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97 (6th Cir. 1992) (risk that defendant would transfer assets constitutes irreparable harm justifying a preliminary injunction).

### III. Conclusion

For the foregoing reasons, it is **ORDERED** that FenF's *Ex Parte* Renewed Motion for TRO is **GRANTED**. It is further **ORDERED** that

1. Defendant Zhanjiang Yongxiao Information Consulting Studio, its agents, servants, employees, attorneys, and those persons in active concert or participation with it, who receive actual notice of this Order, are immediately enjoined from advertising, offering for sale, or selling toe stretchers and spacers having the configuration of Defendant's Gel Toe Stretcher & Separator or any product not colorably different therefrom.

2. Defendant Zhanjiang Yongxiao Information Consulting Studio, its agents, servants, employees, attorneys, and those persons in active concert or participation with it, who receive actual notice of this Order, are immediately enjoined from transferring any assets of Defendant Zhanjiang Yongxiao Information Consulting Studio. Defendant may petition the court to modify or dissolve this asset restraint.

3. This order is conditioned upon, pursuant to Local Rule 67.1, Plaintiff's filing with the Clerk of the Court a bond in the amount of $5,000.00, to be held in a non-interest-bearing account, no later than August 14, 2025, to secure the payment of such costs and damages not to exceed such sum as may be suffered or sustained by any party who is found to be wrongfully restrained hereby.

4. FenF shall attempt to notify Defendant of the issuance of this order by sending it, along with a copy of the complaint, TRO motion, and brief, via overnight courier to Room 503, Building 2, No. 19 Wenyu Street, Suicheng Subdistrict, Suixi County, Zhanjiang City, Guangdong Province, China, 524300.

5. As necessary, Plaintiff shall request extensions of this temporary restraining order and update the court regarding its efforts to effect service upon Defendant.

6. Once Defendant has been served, a hearing shall be set at which time Defendant and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

**SO ORDERED.**

| | |
|---|---|
| Date: August 8, 2025<br>AT 2:45 P.M. | <u>s/F. Kay Behm</u><br>F. Kay Behm<br>United States District Judge |